UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

NING WEN (a/k/a Wen Ning),
HAILIN LIN (a/k/a Lin Hailin),
JIAN GUO QU (a/k/a Qu Jian Guo), and
RUO LING WANG (a/k/a Wang Ruo Ling),

    Defendants.

Case No. 04-CR 241
Green Bay Division

'04 OCT 13 P4:49

## INDICTMENT

**The Grand Jury Charges:**

### COUNT ONE: Conspiracy

1.    Between on or about August 1, 1991, and on or about September 30, 2004, beginning in California and continuing in the State and Eastern District of Wisconsin, and elsewhere,

    **NING WEN (a/k/a Wen Ning);**
    **HAILIN LIN (a/k/a Lin Hailin);**
    **JIAN GUO QU (a/k/a Qu Jian Guo); and**
    **RUO LING WANG (a/k/a Wang Ruo Ling)**

did knowingly conspire among themselves and with persons known and unknown to the grand jury, to commit offenses against the United States by violating export restrictions in the shipment of items to the People's Republic of China (hereafter "PRC").

## Export Restrictions

2.  The conspiracy included willful violations of the following statutes, regulations, and presidential orders:

a)  The Export Administration Act of 1979 (hereafter "EAA"), as amended, Title 50, United States Code, Appendix, section 2401 et. seq.;

b)  Title 50, United States Code, section 1705(b);

c)  Export Administration Regulations (hereafter "EAR"), Title 15, Code of Federal Regulations (hereafter "C.F.R."), Parts 730-774);

d)  Presidential Executive Orders under the International Emergency Economic Powers Act (Title 50 United States Code, sections 1701-1706 (1991 and Supp. 1999)) (otherwise known as "IEEPA"), including Executive Order 12924 (3 C.F.R., 1994 Comp. 917 (1995)), extended by Presidential Notices of August 15, 1995 (3 C.F.R., 1995 Comp. 501 (1996)), August 14, 1996 (3 C.F.R., 1996 Comp. 298 (1997)), August 13, 1997 (3 C.F.R., 1997 Comp. 306 (1998)), August 13, 1998 (3 C.F.R., 1998 Comp. 294 (1999)), and August 10, 1999 (64 Fed. Reg. 44101 (August 13, 1999)), all of which invoked his authority under IEEPA to continue the EAR in effect during a lapse of the EAA on August 20, 1994; and Executive Order 13222 of August 17, 2001 (3 C.F.R., 2001 Comp., p. 783 (2002)), as extended by the Notice of August 7, 2003 (68 Fed. Reg. 47833, August 11, 2003), and the Notice of August 6, 2004, (69 Fed. Reg. 48763, August 10, 2004), which continued the EAR in effect under IEEPA.

2

3. The combined effect of the above-listed legal provisions was to provide the public with a list of "restricted" items that could not be exported from the United States to certain countries, including the PRC, without express authorization from the government of the United States through an export license.

4. The above-listed legal provisions also imposed disclosure requirements on all exports to the PRC, including the requirement to file a "Shipper's Export Declaration" if the item required an export license and/or the value of an export exceeded $2,500.

## Object of the Conspiracy

5. As part of the conspiracy, the defendants sought to export restricted items from the United States to the PRC in violation of these laws by willfully:

   a) failing to obtain the proper export licenses for certain shipments;

   b) providing false descriptions and/or withholding required information on the invoices provided to the shippers;

   c) concealing the ultimate destination for certain items;

   d) understating the value of certain shipments to avoid disclosure obligations for values exceeding $2,500.

3

## Background and Identification of the Defendants

6.      Defendant Ning Wen was born in the PRC. From approximately 1987 through 1992, he worked at PRC consulates in California. Thereafter and continuing through to the date of this Indictment, Wen moved to and resided in Manitowoc, Wisconsin. Wen became a United States citizen in 2000.

7.      Defendant Hailin Lin is the wife of Ning Wen. She also was born in the PRC. She became a United States citizen in 2001.

8.      In approximately 1992, Wen and Lin formed Wen Enterprises for the purpose of obtaining and exporting semiconductor products. Wen Enterprises was primarily operated out of their home in Manitowoc, Wisconsin.

9.      Jian Guo Qu is a male citizen and resident of the PRC.

10.     Ruo Ling Wang is the wife of Qu and a resident of the PRC.

11.     Qu and Wang are employees at the Beijing Rich Linscience Electronics Company (hereafter "BRLE") in Beijing, PRC.

4

## Description of the Conspiracy

12.  Beginning in approximately 1991, while still living and working in California, Wen began sending computer chips, some of which he was informed were restricted items, from the United States to Qu in the PRC.

13.  According to records kept by Wen, the items were sent surreptitiously, using third parties who personally carried the parts from the United States to the PRC.

14.  After Wen and Lin moved to Manitowoc, the process among the conspirators became more formalized and generally involved the following pattern:

a) Qu, Wang and others at BRLE collected orders from others in the PRC for the purchase of semi-conductor and other electronic components. These orders would then be communicated to Wen Enterprises via facsimile and telephone calls.

b) Lin obtained price quotes on these components from United States suppliers. The price quotes were communicated to Qu, Wang and others at BRLE.

c) Lin purchased the ordered components from the United States sources and had them shipped to Manitowoc. The orders included both restricted and unrestricted items.

d) Lin repackaged the items before shipping them to BRLE. As part of obtaining, repackaging and shipping items to the PRC, Lin knowingly and willfully:

(i) failed to obtain the proper export licenses for certain

5

shipments;

(ii) provided false descriptions and/or withheld required information on shipping invoices;

(iii) concealed the ultimate destination for certain items;

(iv) understated the value of certain shipments to avoid having to file Shipper's Export Declarations.

15. Qu and Wang were aware that the exports involved fraudulent acts undertaken by Lin. At various times during the conspiracy, the conspirators discussed among themselves the nature of the false documentation and how to avoid detection.

16. In order to pay for the items to be exported, Qu arranged for payments to be made to Wen Enterprises using sources other than BRLE. The sources included the China National Packaging Base Construction Company, which was located in the PRC; and an individual, Ms. Tsui Kan, located in Hong Kong.

17. Lin and Wen consulted during the time period of the conspiracy regarding the export business, Lin's role, and the payments from Qu.

18. During the time period of the conspiracy, from January 2002, through September 2004, approximately $1.9 million was transferred from these sources to a bank account of Wen Enterprises in Manitowoc.

19. Wen and Lin shared the net profit from these transactions.

6

## Acts in Furtherance of the Conspiracy

20. On or about the following dates, in the State and Eastern District of Wisconsin and elsewhere, Hailin Lin did cause the following shipments to be sent from the United States to the PRC without the required export license.

|    | Date          | Restricted Part Number | Quantity |
|----|---------------|------------------------|----------|
| a) | July 20, 2002 | SPT7760AIK             | 4        |
| b) | June 27, 2003 | SPT7722SIT             | 13       |
| c) | Mar. 14, 2003 | SPT7721SIT             | 2        |
| d) | Feb.10, 2004  | SPT7722SIT             | 16       |
| e) | June 6, 2004  | SPT7722SIT             | 16       |
| f) | Sept. 3, 2004 | SPT7760AIK             | 2        |

21. On or about the following dates, in the State and Eastern District of Wisconsin and elsewhere, Hailin Lin did cause the following shipments to be sent from the United States to the PRC. The shipments included false representations regarding the true value of the shipments:

|    | Date          | Price Reported | Actual Price |
|----|---------------|----------------|--------------|
| a) | May 21, 2004  | $2,469.50      | $11,328.70   |
| b) | July 16, 2004 | $2,427.50      | $10,450.20   |

7

22. On or about June 3, 2004, in the State and Eastern District of Wisconsin, and elsewhere, Hailin Lin conducted a telephone conversation with an employee of BRLE wherein Lin discussed attempting to obtain a restricted item.

23. On or about July 6, 2004, in the State and Eastern District of Wisconsin, and elsewhere, Hailin Lin conducted a telephone conversation with Ning Wen wherein they discussed methods to avoid detection.

24. On or about July 15, 2004, in the State and Eastern District of Wisconsin, and elsewhere, Hailin Lin conducted a telephone conversation with Jian Guo Qu wherein Qu cautioned Lin about the extent of the false information on the shipping documents, so as to avoid law enforcement detection.

25. On or about September 1, 2004, in the State and Eastern District of Wisconsin, and elsewhere, Hailin Lin conducted a telephone conversation with Ruo Ling Wang wherein Wang discussed with Lin the need to use letter mail to export an item so that it would not "go through customs."

All in violation of Title 18, United States Code, section 371.

8

## COUNT TWO: Export Violation

1. The allegations at paragraphs 2 through 4 of Count One are incorporated herein.

2. On or about September 3, 2004, in the State and Eastern District of Wisconsin, and elsewhere,

> **NING WEN (a/k/a Wen Ning);**
> **HAILIN LIN (a/k/a Lin Hailin);**
> **JIAN GUO QU (a/k/a Qu Jian Guo); and**
> **RUO LING WANG (a/k/a Wang Ruo Ling)**

did knowingly and willfully cause the export of restricted items to the PRC without the required export license.

3. The restricted items are identified as Part Numbers AD9236BRU-80 and AD9236BCP-80.

All in violation of Title 50, United States Code, section 1705(b), Title 18, United States Code, section 2, and Title 15, Code of Federal Regulations, section 764.2(a).

9

## COUNT THREE: Export Violation

1. The allegations at paragraphs 2 through 4 of Count One are incorporated herein.

2. On or about September 17, 2004, in the State and Eastern District of Wisconsin, and elsewhere,

**NING WEN (a/k/a Wen Ning);
HAILIN LIN (a/k/a Lin Hailin);
JIAN GUO QU (a/k/a Qu Jian Guo); and
RUO LING WANG (a/k/a Wang Ruo Ling)**

did knowingly and willfully cause the export of a restricted item to the PRC without the required export license.

3. The restricted item is identified as Part Number AD9226ARS.

All in violation of Title 50, United States Code, section 1705(b), Title 18, United States Code, section 2, and Title 15, Code of Federal Regulations, section 764.2(a).

10

## COUNT FOUR: Export Violation

1. The allegations at paragraphs 2 through 4 of Count One are incorporated herein.

2. On or about May 21, 2004, in the State and Eastern District of Wisconsin, and elsewhere,

**NING WEN (a/k/a Wen Ning);
HAILIN LIN (a/k/a Lin Hailin);
JIAN GUO QU (a/k/a Qu Jian Guo); and
RUO LING WANG (a/k/a Wang Ruo Ling)**

did knowingly and willfully make a false statement and conceal a material fact in connection with the preparation of an export control document.

3. The value represented on the shipping invoice was $2,469.60, when in fact the true value of the shipment exceeded $11,000.

All in violation of Title 50, United States Code, section 1705(b), Title 18, United States Code, section 2, and Title 15, Code of Federal Regulations, section 764.2(g).

## COUNT FIVE: Export Violation

1. The allegations at paragraphs 2 through 4 of Count One are incorporated herein.

2. On or about July 16, 2004, in the State and Eastern District of Wisconsin, and elsewhere,

> **NING WEN (a/k/a Wen Ning);**
> **HAILIN LIN (a/k/a Lin Hailin);**
> **JIAN GUO QU (a/k/a Qu Jian Guo); and**
> **RUO LING WANG (a/k/a Wang Ruo Ling)**

did knowingly and willfully make a false statement and conceal a material fact in connection with the preparation of an export control document.

3. The value represented on the shipping invoice was $2,427.50, when in fact the true value of the shipment exceeded $10,000.

All in violation of Title 50, United States Code, section 1705(b), Title 18, United States Code, section 2, and Title 15, Code of Federal Regulations, section 764.2(g).

12

## COUNT SIX: Money Laundering Conspiracy

1.  Between at least on or about January 1, 1999, and on or about September 30, 2004, in the State and Eastern District of Wisconsin, and elsewhere,

**NING WEN (a/k/a Wen Ning);
HAILIN LIN (a/k/a Lin Hailin); and
JIAN GUO QU (a/k/a Qu Jian Guo)**

did knowingly conspire among themselves and with persons known and unknown to the grand jury to commit money laundering by transmitting and transferring funds from the PRC and Hong Kong to a place in the United States with the intent to promote the carrying on of a specified unlawful activity.

2.  The specified unlawful activity included violations of the export restrictions set forth in paragraph 2 of Count One above.

3.  The funds were to be used, in part, to purchase restricted items for BRLE.

All in violation of Title 18, United States Code, sections 2, 1956(a)(2)(A), and 1956(h).

## COUNT SEVEN: Money Laundering

1. On or about July 28, 2004, in the State and Eastern District of Wisconsin, and elsewhere,

**NING WEN (a/k/a Wen Ning);
HAILIN LIN (a/k/a Lin Hailin); and
JIAN GUO QU (a/k/a Qu Jian Guo)**

did knowingly cause funds to be transmitted and transferred from Hong Kong to a place in the United States with the intent to promote the carrying on of a specified unlawful activity.

2. The specified unlawful activity included violations of the export restrictions set forth in paragraph 2 of Count One above.

3. The funds included approximately $49,967 sent from Hong Kong to a bank account of Wen Enterprises in Manitowoc, Wisconsin.

4. The funds were to be used, in part, to purchase restricted items for BRLE.

All in violation of Title 18, United States Code, sections 2 and 1956(a)(2)(A).

## COUNT EIGHT: Money Laundering

1.  On or about September 10, 2004, in the State and Eastern District of Wisconsin, and elsewhere,

**NING WEN (a/k/a Wen Ning);**
**HAILIN LIN (a/k/a Lin Hailin); and**
**JIAN GUO QU (a/k/a Qu Jian Guo)**

did knowingly cause funds to be transmitted and transferred from the PRC to a place in the United States with the intent to promote the carrying on of a specified unlawful activity.

2.  The specified unlawful activity included violations of the export restrictions set forth in paragraph 2 of Count One above.

3.  The funds included approximately $90,666 sent from the PRC to a bank account of Wen Enterprises in Manitowoc, Wisconsin.

4.  The funds were to be used, in part, to purchase restricted items for BRLE.

All in violation of Title 18, United States Code, sections 2 and 1956(a)(2)(A).

## FORFEITURE PROVISIONS

The United States seeks forfeiture of all property of defendants Ning Wen and Hailin Lin involved in the offenses set forth in Counts Six, Seven, and Eight or any property traceable to such property, as authorized by Title 18, United States Code, § 982(a)(1).

The property subject to forfeiture includes, but is not limited to:

a. the balance of funds in account number 2203003690, maintained at Associated Bank, N.A., Manitowoc, Wisconsin, in the name of Wen Enterprises,

b. the balance of funds in account number 2207010105 maintained at Associated Bank, in the name of Ning Wen or Hailin Lin;

c. the balance of funds in SEP IRA account number 2908064261 maintained at Associated Bank, in the name of Ning Wen;

d. the balance of funds in SEP IRA account number 2908062277 maintained at Associated Bank in the name of Ning Wen;

e. the balance of funds in account number 6006015969 maintained at First Federal Capital Bank in the name of Hailin Lin or Ning Wen;

f. the balance of funds in account number 3008038475 maintained at First Federal Capital Bank in the name of Hailin Lin or Ning Wen; and

g. the real property at 402 Wild Oak Drive, Manitowoc, Wisconsin.

Pursuant to Title 21, United States Code, Section 853(p), as incorporated by

16

Title 18, United States Code, Section 982(b), the defendants shall forfeit substitute property, up to the value described in the preceding paragraph, if by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property that cannot be subdivided without difficulty.

## SENTENCING ENHANCEMENTS

1.  With respect to Counts One through Eight of the indictment, as to all defendants, the offense(s) involved evasion of national security controls. *See* United States Sentencing Guideline, Sections 2M5.1(a)(1) and 2S1.1(b)(1).

A TRUE BILL:

███████████
FOREPERSON

Dated: 10-13-04

*Steven M. Biskupic*
STEVEN M. BISKUPIC
United States Attorney

18